We are seated for our 1 o'clock case this afternoon, 410-0127. Is it Klocke v. Thirsty's Tavern? Right pronunciation, very good. For the appellant, Mr. Constance. For the appellee, Mr. Glesson.  May it please the court, counsel, there really is no issue on the facts in this case, as they're briefly set out. It's a question of law and interpretation of certain documents. The issue is one, whether there's a double recovery. The plaintiff's deceit in this case was killed in a motorcycle accident. She brought suit against Thirsty's. Her father acted as administrator, and the jury awarded $500,000 on a loss of society claim. And $49,000 in some change for medical and funeral bills. This was all spelled out on the verdict form. We have an interesting issue here concerning a double recovery. And as far as we could tell in the research, both parties, we couldn't find a case right on point. Basically, when you deal with the Dram Shop Act, as your honors know, if I stepped out on the sidewalk after an oral argument here, and a drunk driver struck me, I would have a case for bodily injury. My wife would have a case on property damage under the Financial Responsibility Act for my medical bills. And she would also have a claim for a loss of support up to $71,000. However, if I passed away, my wife would have a claim for loss of society, like was in this case. She would have a claim for bodily injury through death. Now, what do we have in this case on those outlines? We have a $50,000 settlement, which was paid by a progressive insurance company to the administrator, Mr. Clockey. This was approved by the court of Calhoun County on a petition requesting the authorization of settlement for wrongful death. And a order authorizing this settlement for $50,000 was so entered by the court. There wasn't one word in the court papers in Calhoun County with regard to loss of society. The release, in the release, there are two interesting things. Not only does it point out it's for medical bills and funeral bills, but at the bottom, it points out that if you don't take care of the liens for the medical and possible funeral bill, then you have to return the money or you're liable back to progressive. The issues on double recovery are interesting. Until 1994, when the patent case, which is cited in the brief, was decided, it wasn't too clear. The plaintiff with the attorney at the lower court relied heavily on the Wisniewski case, which is commented on in both briefs. Up to the time of patent, when it became what I call black letter law, because it was decided by the Supreme Court. The Wisniewski court mentioned that even though the defendant, in that case, the Wisniewski case, Gramsci was not present when the settlement was approved and made in the underlying case against the driver. They were sorry, but they couldn't do anything about it. The Supreme Court, in deciding the patent case, said, there can only be one recovery. It's not up to the defendant to prove what settlement amount should be applied to the settlement. In this case, your honors, we have the $49,000 that's set out specifically in the jury award. We have a $50,000 payment that has been authorized by the probate court of Calhoun County, specifically for wrongful death. Now, where else can you apply a set off? The judge in this case applied it to, Judge Pistorius applied it to the loss of society, but if we look at these actions that are available under the Dram Shop Act, and I'm talking about the bodily injury thing or flash death that we have in this case, the only place that you can apply the medical bills and the funeral bills are to the bodily injury claim. Because in an instruction to the jury, if either I was alive or dead, my wife would be able to put that element either in the bodily injury section or under the property damage section. But in this case, it could not be put under the property damage exception, because the young girl was 19, and therefore, the family expense doctrine would not apply to her like it would if she were 18 or under. So the only place that the set off can be applied is against the bodily injury claim in the original complaint. And therefore, we believe that Judge Pistorius erred when he applied it against the loss of society claim. Any questions? Why did he not understand the points that you were making? What led him astray? I don't think anything led him astray because we couldn't give him any case law. The last comment that he made before he issued his ruling was he'd leave it up to you, this panel, to decide the issue. Should something different have happened before the probate court in order to have accomplished not what your client might want, but rather probably what the other side might hope to have happened? I'm talking about the process of approving the settlement. No, I don't think anything could be done other than what was done. The way the release, and based on the patent case, since there can't be a double recovery, nothing would have changed it, in my opinion, because under the Gramshop Act, you're limited to a bodily injury claim, a property damage claim, a loss of support claim, or a loss of society claim. And the only way you can put these is either in the bodily injury claim or the property claim, and she can't have a property claim because she was 19, the family couldn't have one. So therefore, the only place that it could ever be is applied against the bodily injury, or in this case, the death portion of the Gramshop Act. Which would have wiped out the recovery for medical expenses, in effect. Yes. We have no questions. Thank you. Thank you. May I please report your honors? Counsel. Your honors, just because, and I believe you probably are familiar with the double recovery, but I did a worksheet that I gave to Mr. Constance. It's very simple, and I would just ask for your permission to approach and let you. Any objection? No, there is none. Excellent. Thank you. I did this just because I thought it might be a little harder explaining it without actually looking at what could have been recovered in this case. In this particular case, this was a tragic case where she was on the back of a motorcycle, and two possible damage recoveries are available to her. The first is for $49,000 for medical bills and a helicopter ride here back to Springfield. She had no pain and suffering. This was the only thing that was available to her for her injuries, $49,000. And secondly was whatever was available for her loss of society to her family, which in this case, when we tried the case, it was limited to $71,000 by the Dram Shop Act. So there was no reason to ask for $1 million or $5 million, because whatever it was was going to be reduced. But the amount that was requested was $500,000. The jury gave $500,000. But part of the argument is anything for the loss of a daughter and a sibling is what the jury could have awarded. So as a plaintiff's lawyer, you're thinking, how can I maximize the recovery for my client when the motorcycle driver offers $50,000 before the case ever gets off the ground? And the case American National Bank stands for the proposition that, and I'm quoting from them, we see nothing wrong with the probate court's allocation to permit maximum recovery under the Dram Shop action. The fact remains that there is no double recovery. In this particular case, you've got to ask yourself, is there a double recovery? She could have only received either under the Dram Shop Act or under the personal injury case against the motorcycle driver the two exact remedies, medical bills of $49,000 and loss of society. So if we would have said to the court, let's accept this as $50,000 for injuries, for the medical bills, we would have immediately wiped out our right to obtain that during the Dram Shop case. So only $71,000 would have been available. The other thing is if you accept it as medical bills only, you immediately become subject to liens from all of those medical bills from, I think it was Memorial Medical Center and the helicopter ride and all of her creditors and everybody else could have that money. So what you do is you settle it on the wrongful death end of things, which in her case was only loss of society. She was 19 years old. She wasn't supporting anything. The only thing in that Dram Shop Act instruction, I'm sorry, in the wrongful death instruction was loss of society to her mom, her dad, and her three siblings. Would you have been surprised? I mean, you might have appealed, but would you have been surprised if the judge had done it the other way? What concerns me is that your worksheet shows me that this may be what's best for your client. Sure. Maybe it's best in a societal, from a policy perspective. I don't know. What I'm asking is what guides the trial court in doing it? Well, I think the trial court, what he looked at was what was done in the probate court to get things approved. And instead of just signing a general release that just says, anything and everything is released, we went into a different county, into the probate court. And we filed what is done in these cases is a petition to settle for wrongful death. It never once mentioned medical bills, a helicopter bill, didn't mention any of that. The only thing it mentioned is, here's mom and dad and three siblings, and the judge needs to decide the percentage of dependency, which is exactly, in this case, what the jury did to apportion loss of society. I think they gave each parent 35% and each kid 10%, only with loss of society. It's not done with medical bills. So the trial judge looked and said, what did you do with that $50,000? We petitioned the court, the probate court, to allocate proceeds. There was an order authorizing the settlement for the wrongful death proceeds. And lastly, we filed a motion in limine before the trial ever occurred that asked the judge to apply the set-off to the loss of society. Because that's naturally what anybody would do that was representing this family. And the judge said it was not right for hearing at that time because it was not a verdict. And if there was a zero verdict, he would be wasting all of our time. So he waited until afterwards to determine the set-off. That's when he heard all the evidence and the same evidence that you're hearing today. And so you've got to ask yourselves, is there a double recovery here? The jury gave $49,000 for bills and $500,000 for loss of society. And what we got was, what we're asking for was the $49,000 in the bills, the $50,000 from the motorcycle driver, and the statutory limit of $71,000, which means of the $500,000 verdict, we only received $121,000. So the family is under-compensated primarily because of insurance limitations and also the Dram Shop Act. But there is definitely no double recovery. What happens to the $50,000? The original $50,000 was distributed to the family pursuant to that order. And like I said, if it didn't go to mom, dad, and the siblings, it would have gone into the estate for the dad to pay all the medical bills and everybody else. So you can anticipate what's going to happen at trial. And you know that if there is a verdict, and Dram Shop cases are a different type of case, but if there is a verdict, it was going to be very significant for this young lady. So the best thing we could do for them is say, look, this $50,000 has to go to loss of society because if there's a verdict, it's going to be significant for that. And we made that effort. And one of the only arguments is that the release is a general release. But in patent it says, just common sense, you can't get any defense lawyer to say, OK, I'm just going to release you for loss of society. They require a release for everything and anything no matter what. But the release is not outcome determinative. They were aware of the court hearing. They were aware of everything that was going on. And American National Bank, the theory that they said, again, is there is nothing wrong with a probate court's allocation to permit maximum recovery under the Dram Shop action. And if this case was not settled with that motorcycle driver, and it did go to court, we would have been paid everything. It was just so happened that the motorcycle paid us before the trial and said, without any hesitation, without my involvement to the family, we're very sorry. Here's our $50,000. There was no need for a trial. And the kid was young and didn't have anything. So there wasn't going to be an excess verdict or anything. But if there was a trial and he was a defendant, the damages would have been $500,000 and $49,000. And they would have tendered their money for the loss of society portion. Mr. Constance's client would have paid for the loss of society and for that amount. So the only wrinkle here is that they paid their money in advance. I have a question for you. Assume that I agree with you that the $50,000 should be set off against the loss of society award. Sure. Why doesn't it make sense for the trial court to reduce the $500,000 award, which is a defection, frankly, fictional award. Jury gave it, but we all know that only $71,000 of that can actually become liability of the dram shop. So why doesn't it make sense for the court to say, OK, there's a $500,000 award, but I, by law, have to reduce that to $71,000. Then apply the $50,000 set off to the $71,000. Instead of to the fictional $500,000. I just believe that because of the double recovery situation, we have a motorcycle driver that has no limits that could be held responsible for a significant amount. And he was the one that paid that. And so the set off goes from the total amount of the money so that you can get a full recovery. If that was the case, then the plaintiff would not be compensated wholly for the incident. And I don't think that was an issue. I don't believe that that was brought up. No, it wasn't raised. It's just something that, as I looked at this, thought. Right. To me, at least logically, it makes more sense to set the $50,000 off against a real liability, being the $71,000 change, rather than a fictional liability of $500,000. Well, if it was another dram shop case, it would have been. Because you can have 20 dram shops, and that happens when somebody drinks a beer at 10 different places, and you sue 10 different places. And when you settle, there is a set off in that situation. But here, the motorcycle driver is not a dram shop, and that's different. And so you can make a full recovery. And I believe the line of cases on that is very clear. There are a lot of cases on set offs under that theory and exactly how they are going to be settled. There were two dram shops here, right? Yes. Was there a settlement with the second dram shop? No, the jury returned a verdict for one of the dram shops and against one of the dram shops. But without citing any law to you, but doing not near as much dram shop practice as Mr. Constance, but definitely a healthy amount, it's that set off does work that way against the amount you can get when only dram shops are involved. What I'm trying to think of an example of that would fit that, and I think this one does fit. Are you saying that if the motorcycle driver had been a dram shop and had paid $50, then the $50 would be deducted from $71? Absolutely. And that's one of the downfalls with the dram shop is you can have 10 dram shops, but you can only get one limit from all the dram shops. So that would have been the case. And if both dram shops were hit in this particular case, and we were arguing that both of them should have been, the law says that it has to cause the intoxication, not approximate cause. So in this case, we had a toxicologist who was saying, yeah, both did contribute. He drank here and he drank here. And if the jury would have given us $500,000 from both of them, we were even laughing at times saying that the guy that's nicer, the guy that offers me more before trial, is the guy that we're going to let off completely and collect entirely from the other side. Because you can collect from any of the dram shops that you hit for the full amount, not just one, but just one recovery. No other questions. Thank you. Thank you, Your Honors. Rebuttal, Mr. Constance? Just a few things, Your Honor. I believe Counsel was right about one thing. The Dram Shop Act is an animal unto its own. And in my 38 years, I've tried to explain that to a lot of plaintiff's lawyers, because most of them miss the property damage claim, to be honest with you. But back to where we are here. Logically, we have bodily injury. We have property damage, which she can't qualify for. We have loss of support, which she can't qualify for. And we have loss of society, which she can qualify for. And the plaintiff attorney prepared the documents. And they say, for wrongful death. There's not one word when you look at the petition and the order saying loss of society. So logically, the only place where you can put the $50,000 is against the medical bills and the funeral bill, which you can collect under the bodily injury claim. That's the way it works. Why is it logical it couldn't be loss of society? Why isn't it? Because two things, Your Honor. The first is the documents don't mention loss of society. Not one word. And if counsel say a lot of things like this, but we wouldn't be here if the document said loss of society. But secondly, the loss of society does not ever contain one thing about medical bills or funeral bills. The only place you can get those are under bodily injury or property damage, under the Grand Shop Act. It is an animal unto itself. You know why we're here. Yes. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.